**[J-17-2025] [MO: Todd, C.J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 36 MAP 2024 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court at No. 1665 MDA |
| | : | 2022, entered on October 19, 2023, |
| v. | : | Affirming the Judgment of Sentence |
| | : | of the Adams County Court of |
| | : | Common Pleas, Criminal Division, |
| BENJAMIN JORDAN JENKINS, | : | at No. CP-01-CR-0001044-2021, |
| | : | entered on November 18, 2022 |
| Appellant | : | |
| | : | ARGUED: April 8, 2025 |

**CONCURRING OPINION**

**JUSTICE WECHT**                                       **DECIDED: October 23, 2025**

On July 9, 2021, Benjamin Jordan Jenkins was charged for his first offense of driving under the influence ("DUI"). On July 31, 2021, Jenkins was stopped, but not yet charged, with a second DUI offense. Before he was charged on the second offense, the trial court, upon the Commonwealth's recommendation, accepted Jenkins into the accelerated rehabilitative disposition ("ARD") program on the condition that he commit no violation of the law. Part of the process to be accepted into the ARD program was a written application completed by Jenkins. The application asked whether Jenkins had any criminal charges pending against him or any prior convictions. Jenkins answered truthfully that he did not. Jenkins further acknowledged that he would be removed from the ARD program if he violated any conditions of the program.

On March 22, 2022, the Commonwealth charged Jenkins with his second DUI offense, from the July 31, 2021 stop. Shortly thereafter, the Commonwealth sought to

revoke ARD, asserting that Jenkins had violated the ARD condition barring Jenkins from violating the law. The trial court agreed, removing Jenkins from ARD for purportedly concealing his second DUI arrest—an arrest that had not yet occurred—in the ARD application. The trial court acknowledged that Jenkins made no overt misrepresentations, but it opined that "there was an element of deception by omission which if allowed to stand would defeat the spirit and purpose of the ARD Program."[1] The Superior Court agreed and affirmed. According to the Superior Court, excusing Jenkins' failure to disclose his second DUI arrest would "violate the spirit and intent of the ARD program."[2]

The Majority correctly reverses the Superior Court's affirmance of the trial court. The trial court erred in revoking Jenkins' participation in ARD when Jenkins violated no condition of ARD because his second DUI arrest occurred prior to his admission into the program. As the Majority concludes, "a defendant's participation in an ARD program may not be revoked based on a violation of an 'implied' condition."[3] Nor did Jenkins make any misrepresentation in the ARD application.

ARD is a pretrial diversionary program designed to resolve promptly relatively minor cases through treatment rather than punishment. ARD is authorized for DUI offenses in the Motor Vehicle Code. Section 3807(a) permits ARD for criminal defendants charged with DIU offenses.[4] A DUI defendant who is accepted into ARD is subject to specific conditions imposed by the trial court, as well as the requirements set forth in Section 3807(b).[5] Section 3807(e) provides that "[a] defendant who fails to complete any

---

[1]    Tr. Ct. Op., 1/4/23, at 5.

[2]    *Commonwealth v. Jenkins*, 305 A.3d 50, 55 (Pa. Super. 2023).

[3]    Maj. Op. at 18.

[4]    75 Pa.C.S. § 3807(a) (detailing a DUI defendant's eligibility).

[5]    *Id*. § 3807(b).

of the conditions of participation contained in this section shall be deemed to have unsuccessfully participated in an [ARD] program, and the criminal record underlying participation in the program shall not be expunged."[6]  The Commonwealth will proceed on the charges if the defendant fails to meet the requirements of Section 3807, is charged with a crime under the Crimes Code, or violates any condition imposed by the court.[7]

The Rules of Criminal Procedure outline the process by which the Commonwealth may move to remove a defendant from ARD.  Under Rule 318(A),[8] the Commonwealth may move for removal when the defendant violates a condition of ARD.  If the trial court finds that the defendant has violated a condition, the judge may order termination and allow the Commonwealth to proceed on the charges as provided by law.[9]

The District Attorney is responsible for determining which cases will be recommended to the court for entry into the ARD program.  This case, however, does not involve the Commonwealth's discretion to admit a defendant into the ARD program, but the decision to remove a defendant from ARD.  The only way to accomplish removal is through the terms of Section 3807(e) of the Motor Vehicle Code and Rule 318 of the Rules of Criminal Procedure.

---

[6]     *Id*. § 3807(e).

[7]     *Id*. § 3807(e)(2).

[8]     Pa.R.Crim.P. 318(A) ("If the attorney for the Commonwealth files a motion alleging that the defendant during the period of the program has violated a condition thereof. . . the judge who entered the order for ARD may issue such process as is necessary to bring the defendant before the court.").

[9]     Pa.R.Crim.P. 318(C) ("When the defendant is brought before the court, the judge shall afford the defendant an opportunity to be heard. If the judge finds that the defendant has committed a violation of a condition of the program, the judge may order, when appropriate, that the program be terminated, and that the attorney for the Commonwealth shall proceed on the charges as provided by law.").

It is undisputed that Jenkins violated no condition of ARD under Section 3807(e) or Rule 318. Nor did Jenkins violate the trial court's directive not to commit any violation of the law. When the trial court imposed this condition, the second DUI already had occurred. Jenkins accepted the conditions of ARD and complied. Jenkins cannot have violated the terms of ARD through conduct that preceded entry into ARD and the conditions attendant to this program.

The trial court observed that a criminal who has multiple pending cases is not considered for participation in ARD, and a person who receives new charges while on ARD will be removed from the ARD program. From these premises, the trial court reasoned that:

> To allow people with multiple different criminal cases, especially those occurring on different dates, to remain in ARD just because the prior criminal conduct may not have been known to the Court or Commonwealth would violate the spirit and intent of the ARD Programs, which is to give the benefit of a doubt and a second chance to a first-time offender in an expeditious manner.[10]

Acknowledging that "there was no overt misrepresentation" by Jenkins, the trial court opined that "there was an element of deception by omission which if allowed to stand would defeat the spirit and purpose of the ARD Program."[11]

The Superior Court endorsed this approach, holding that excusing Jenkins' failure to disclose prior arrests in an ARD application would indeed violate the spirit and intent of the ARD program.[12] The court reasoned that Jenkins "should not be able to benefit from his failure to disclose to the Commonwealth or the trial court in his ARD application the fact that he had a second DUI arrest simply due to the delay in formal charges being

---

[10]     Tr. Ct. Op. at 5.

[11]     *Id*.

[12]     *Jenkins*, 305 A.3d at 55.

filed."[13]  The Superior Court further reasoned that "it would be unfair to allow" Jenkins to withhold information about his arrest and place the responsibility upon the prosecutor to uncover this fact.[14]

The Commonwealth takes up this argument, asserting that the court may revoke a defendant's participation in ARD in order to promote the spirit of the ARD program. The Commonwealth further asserts that the discretionary nature of the ARD admission process suggests that the prosecutor and the trial court may consider the spirit of the ARD program when deciding whether to allow a defendant's continued participation in the program. The Commonwealth believes that the discretionary nature of admission renders Jenkins' insistence upon "strict adherence to procedural minutiae" out of place.[15] Permitting Jenkins to stay in the ARD program on "a technicality" would, in the Commonwealth's view, reward Jenkins' concealment of his arrest.[16]

Under our Statutory Construction Act, we are not empowered to disregard the unambiguous letter of law "under the pretext of pursuing its spirit."[17]  We soundly reject invitations to rewrite a clear statute under the pretext of applying the spirit of the law.[18]  It

---

[13]  *Id*.

[14]  *Id*.

[15]  Commonwealth's Br. at 19.

[16]  *Id*.

[17]  1 Pa.C.S. §§ 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit"), 1903 (requiring words and phrases generally to be construed according to their common and approved usages).

[18]  *Sivick v. State Ethics Comm'n*, 238 A.3d 1250, 1263 (Pa. 2020) ("We may not disregard the Act's unambiguous language in service of what we believe to be the spirit of the law."). *Cherry v. Pennsylvania Higher Educ. Assistance Agency*, 642 A.2d 463, 465 (Pa. 1994) ("There is no ambiguity in the term which justifies disregarding the words of the legislature on the pretext of pursuing the spirit of the law."); *Commonwealth v. Revtai*, 532 A.2d 1, 11 (Pa. 1987) ("In this case the Superior Court, under the guise of (continued…)

is not the role of the judiciary to surmise and discern what the spirit of the law may be, however one defines the phrase. The policy-making branches determine the policy of the Commonwealth and implement this policy through legislation. Our role as the judiciary is to rely upon the clear language the legislature used in a statute and to apply that language as written. It is not for courts to go rooting around in a statute's plain language like a truffle pig to discern some unspoken legislative policy, and to elevate that policy over the plain language the legislature chose to employ.

The spirit of the law is embodied in the language of the statute. It is not some other, unknown thing that exists outside of language that is otherwise clear and unambiguous. If the statutory language answers the question, it is not for the courts to look beyond that language to ascertain what else the legislature, in effectuating the "spirit of the law," should have required or meant to require. The plain language ends the analysis.

The same can be said in response to the Commonwealth's argument that the statutory language can be disregarded as "procedural minutiae" or mere technicalities. The procedural details of the statute and its technical requirements are binding law, applicable by its plain terms, in order to effectuate the legislative intent. Characterizing something as a technicality is not an invitation to disregard the letter of the law, but to apply that technicality as a means of enforcing the legislative directive.

It does not matter that the Commonwealth would view the statutory requirements for revocation of ARD as procedural minutiae or technicalities. In matters of plain statutory language, courts live in a world of technicalities. Enforcement of statutes as written is by necessity rife with discerning and imposing technicalities. It is the role of the

---

pursuing the spirit of this law, deemed to change the clear letter of the law. This we cannot allow.").

courts to do just that. Repeated invitations to disregard the letter of the law through disparaging characterizations of legal requirements are contrivances invoked by parties who cannot win on the clear statutory language.

Because there is no ambiguity in Section 3807(e) of the Motor Vehicle Code or Rule of Criminal Procedure 318, there is no reason to undertake the task of discerning the existence of a separate "spirit of the law" in derogation of the statute's plain meaning. There is no statutory or rule-based reason for revocation, and certainly none for a court's amorphous understanding of the spirit of the law.

The trial court opined that disallowing removal from ARD in this case would have a chilling effect not only upon the Commonwealth's willingness to admit eligible offenders into the program, but also upon the trial court's amenability to admission. The Commonwealth likewise faults Jenkins for what it refers to as a "glaring omission" in the ARD application.[19]

When Jenkins completed the ARD application, he answered truthfully that he had no prior convictions or pending criminal charges. Arrests are not convictions.[20] Nor are they pending charges. An uncharged arrest is, by definition, not a pending charge, and it remains so until there is a formal charge. A defendant who answers truthfully that he has no pending charges is not being dishonest or hiding things or lying by omission. The defendant is, rather, truthfully disclosing all that is requested of him.

There is nothing in the record indicating that Jenkins deliberately withheld any information from the Commonwealth. The Commonwealth, not the criminal defendant, bears the burden of asking the questions that it believes are material to its decision to

---

[19]     Commonwealth's Br. at 8.

[20]     *Commonwealth v. Berry*, 323 A.3d 641, 654 (Pa. 2024) ("As a general matter, evidence of a defendant's arrest record is inadmissible and irrelevant in nearly every criminal law context.").

exercise discretion to recommend a defendant for ARD. Because the Commonwealth did not ask Jenkins about an uncharged DUI arrest, Jenkins had no duty to disclose his second DUI stop. To the extent that the Commonwealth has reconsidered and determined that this information would have informed its recommendation, the Commonwealth is free to alter the application to ask about prior uncharged conduct. What the Commonwealth cannot do is fault a defendant for truthfully answering questions, but failing to do the Commonwealth's job by disclosing other information that the Commonwealth may have thought relevant but did not seek to elicit.

Justice Mundy joins this concurring opinion.